**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Power Road-Williams Field LLC,<br><br>  Plaintiff,<br><br>v.<br><br>Gilbert, et al.,<br><br>  Defendants. | No. CV-13-02065-PHX-DGC<br><br>**ORDER** |

Defendants Town of Gilbert, City of Mesa, and Maricopa County have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 7. The motion is fully briefed. The Court will grant Defendants' motion in part and remand this case to Maricopa County Superior Court.[1]

**I.  Background.**

Plaintiff Power Road-Williams Field, LLC brought this action in Arizona Superior Court on May 15, 2013. Doc. 1-1 at 3. Plaintiff alleges violations of state and federal law, including A.R.S. § 9-461.11(F) and 42 U.S.C. § 1983. Defendants removed the action to federal court on October 10, 2013. Doc. 1.

Plaintiff owns approximately 73 acres of land located at the northwest corner of the intersection of Power Road and Williams Field Road in Maricopa County. Doc. 1-1, ¶ 6. Power Road is a major arterial roadway that experiences heavy traffic, services the

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

larger metropolitan area, and serves as the common corporate boundary between Gilbert and Mesa. *Id*., ¶¶ 8-9.

Defendants entered into an intergovernmental agreement ("IGA") pursuant to A.R.S. § 11-951, *et seq*., to undertake a $30 million improvement project to widen and realign a segment of Power Road, creating a separate one-way, three-lane road in each direction. Doc. 1-1, ¶ 11. The gist of Plaintiff's complaint is that the IGA did not comply with A.R.S. § 9-461.11(F) and that the process mandated by statute was not followed. *Id*., ¶ 21. Plaintiff alleges that the Town of Gilbert staff "decided to radically re-design and re-align the intersection of Power Road and Williams Field Road" in order to "retaliate against Plaintiff and deprive it of the economically viable use of Plaintiff's property" because Plaintiff had refused to cooperate with Gilbert's plan to annex part of the property. *Id*., ¶¶ 13, 57-58.

The Gilbert General Plan states that arterial roads should provide reasonable levels of traffic services ("LOS"), that traffic signals and intersection design should create a safe and efficient flow of traffic to optimize travel and increase corridor capacity, and that public projects should reduce vehicle emissions. *Id*., ¶ 28. Plaintiff alleges that Power Road could have been widened to three lanes traveling in each direction by using the existing alignment and right of way (the "Existing Improved Alignment"). *Id*., ¶ 29. Multiple traffic impact analyses commissioned by Plaintiff and Defendants reported that the Existing Improved Alignment would be superior to the proposed realignment. *Id*., ¶¶ 34-44. Nevertheless, the Gilbert Town staff chose to redesign the roadway intersection and construct an expensive and longer bridge over a floodway and canal (the "One Way Alignment"). *Id*., ¶ 30.

Plaintiff alleges that the One Way Alignment does not conform to the Gilbert General Plan and significantly reduces the value of Plaintiff's property. *Id*., ¶ 45. Plaintiff alleges that Defendants adopted the IGA without (1) reviewing the economic impact of the alignment on development potential for surrounding land; (2) considering the effect on area business or tax revenues; (3) determining whether the realignment of a

major arterial roadway and construction of a multimillion dollar bridge would conform to the Gilbert Plan; (4) determining whether construction of the One Way Alignment would be cheaper than the Existing Improved Alignment; (5) considering the fact that the One Way Alignment will increase traffic wait times, reduce traffic service below acceptable LOS, and generate more air pollution; (6) analyzing the effect of the One Way Alignment design on traffic safety and intersection maintenance costs; and (7) determining whether the intersection design will fail before its ultimate design year due to the extremely short distances between signalized intersections.  *Id*., ¶ 97.  As a result of these failures, Plaintiff alleges that it was deprived of property without the process required by state law and is entitled to compensation of more than $7,100,000.  *Id*., ¶¶ 118-19.

## II.     Legal Standard.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    Analysis.

Defendants argue that the complaint must be dismissed for three reasons: (1) it is barred by res judicata; (2) it is barred by the statute of limitations; and (3) it fails to state

a claim under 42 U.S.C. § 1983 or A.R.S. § 9-461.11(F).  Doc. 23 at 1; Doc. 7 at 2-3.  The Court will address each argument below.

**A.    Res Judicata.**

Plaintiff instituted an action in Arizona Superior Court in March 2011, suing Defendants for alleged violations of A.R.S. § 11-952 and § 9-461.11(F) (the "Previous Action").  Doc. 22 at 1; Doc. 22-1 at 1.  Plaintiff alleged that Defendants had violated the Gilbert General Plan (Doc. 22-1 at 28), failed to follow statutory procedures (Doc. 22-1 at 32), and failed to enter into an IGA (Doc. 22-1 at 33).  Plaintiff sought declaratory, injunctive, and mandamus relief, but no monetary relief, presumably because the improvements had not yet been built.  The Superior Court granted Defendants' motions to dismiss three of Plaintiff's four claims for failure to state a claim and later granted summary judgment on the remaining claim.  Doc. 22 at 2.  Before final judgment had been entered, Plaintiff filed this action, alleging that Defendants' IGA was defective and adding a claim for damages under 42 U.S.C. § 1983 and a state law claim for negligence.  The Superior Court entered judgment on August 8, 2013.  *Id*.  Plaintiff appealed to the Arizona Court of Appeals and briefing is now underway.  *Id*.

"To determine the preclusive effect of a state court judgment, federal courts look to state law."  *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation omitted).  "Under Arizona law, a claim is barred by res judicata if a court previously issued a final judgment on the merits involving the same cause of action with the same parties."  *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986).  Arizona uses the "same evidence" test for determining whether an earlier action is the same as the current action.  *Phoenix Newspapers, Inc. v. Dep't of Corrections, State of Ariz.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997).  Under this test, "[i]f no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred."  *Id.*; *see also Rousselle v. Jewett*, 421 P.2d 529, 531 (1966).  The "same evidence" test is quite liberal, and permits a plaintiff to avoid preclusion "merely by posturing the same claim as a new legal theory," even if both theories rely on

the same underlying occurrence. *Phoenix Newspapers, Inc.*, 934 P.2d at 805.

The claims asserted in this case are not barred by res judicata. Although the claims asserted in the Previous Action arise from the same underlying dispute and within the same administrative and statutory framework, Plaintiff's claims in this case are legally and factually distinct. The Previous Action sought redress for harms stemming from Defendants' failure to enter into an IGA, failure to conform to the Gilbert General Plan, and arbitrary and capricious exercise of governmental powers. Doc. 23 at 3; Doc. 22-1 at 28-35. This case seeks redress for harms stemming from an allegedly deficient IGA that Defendants entered into after the Previous Action was filed, asserts a claim under 42 U.S.C. § 1983 for depriving Plaintiff of property without due process of law, and claims negligent use of governmental power to retaliate against Plaintiff. Doc. 23 at 4-5; Doc. 1-1 at 26-31. Although the claims arise from some of the same facts as the Previous Action, they are new legal theories based on some additional facts and therefore are not barred by res judicata under Arizona law. *See Phoenix Newspapers*, 934 P.2d at 805 (explaining that the same evidence test allows litigants to "implicat[e] somewhat different facts" and "recast their claims under new theories").

### B. Statute of Limitations.

Defendants argue that all of Plaintiff's state law claims are barred by a one-year statute of limitation. Doc. 7 at 11. Defendants assert that the state law claims accrued on May 10, 2012, "at the very latest," and that Plaintiff filed its complaint on May 15, 2013. *Id.* at 11-12. Both of Plaintiff's state law claims stem from Defendants' execution of the allegedly deficient IGA. Plaintiff's complaint alleges that the IGA was recorded on May 10, 2012, but that Plaintiff's counsel did not and could not receive a copy of the IGA until May 16, 2012. Doc. 1-1, ¶¶ 86-87. Plaintiff argues that the causes of action did not accrue until May 16, 2012, the day Plaintiff's counsel received a copy of the IGA. Doc. 11 at 16.

In Arizona, any action against a public entity or public employee must be brought within one year after the accrual of a cause of action. A.R.S. § 12-821. The related 180-

1  day deadline for presenting a notice of claim to the public entity, set forth in A.R.S. § 12-
2  821.01, provides that the cause of action accrues "when the damaged party *realizes* he or
3  she has been damaged and knows or reasonably should know the cause, source, act,
4  event, instrumentality or condition which caused or contributed to the damage."  A.R.S.
5  § 12-821.01(B) (emphasis added).  Arizona courts have applied this trigger to both the
6  one-year statute of limitation and the 180-day notice of claim period for claims against
7  public entities.  *See Long v. City of Glendale*, 93 P.3d 519, 525 (Ariz. Ct. App. 2004)
8  (reversing dismissal based on both § 12-821 and § 12-821.01); *Flood Control Dist. of*
9  *Maricopa Cnty. v. Gaines*, 43 P.3d 196, 202 (Ariz. Ct. App. 2002) ("a cause of action
10  under § 12-821 does not accrue until it is 'discovered'").

11  Thus, Plaintiff's claim did not accrue until it realized it had been damaged by
12  Defendants' actions.  "The requirement that a claimant 'realize' he has been damaged is
13  inconsistent with the idea that claimants can be deemed to have notice of a claim as a
14  matter of law regardless of their actual knowledge of the claim.  One does not 'realize'
15  something because there is a legal presumption that he knows it."  *Long*, 93 P.3d at 525.

16  Arizona courts additionally have noted that although "official records may give
17  constructive notice of some facts, they do so only to those who are bound to search those
18  records."  *Id*. at 526 (citation omitted).  Defendants cite no law that compelled Plaintiff to
19  search public records for the content of the IGA.  Thus, the Court cannot conclude as a
20  matter of law that Plaintiff's state law claims accrued on May 10, 2012 due to the
21  recording of the IGA.

22  Defendants have also provided the Court with a copy of Plaintiff's claim letter to
23  Mayor John W. Lewis of the Town of Gilbert, dated November 2, 2012, which states that
24  "[t]he date of the actual triggering event for the accrual of [the relevant claims] is
25  Thursday, May 10, 2012.  This is the date on which the IGA was recorded in the official
26  records of the Maricopa County Recorder . . . .  The recording of the IGA gave
27  constructive notice to [Plaintiff] of the IGA[.]"  Doc. 7-1 at 5.  Plaintiff argues that the
28  Court may not consider this letter because "[a] motion to dismiss may not rely upon

- 6 -

evidence outside the pleadings." Doc. 11 at 17. The Court does not agree. Because Plaintiff's complaint refers to the letter and Plaintiff does not question its authenticity, the Court may consider it in ruling on this motion. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendants argue that Plaintiff's statement in the notice of claim letter that its claim accrued on May 10, 2012 is dispositive on the timeliness issue. It is not. Plaintiff's claim accrued when Arizona law says it accrued, not when Plaintiff thought it accrued. Under Arizona law, Plaintiff's cause of action accrued when Plaintiff "realized" it had been damaged. Defendant has not argued or otherwise shown that Plaintiff realized it had been damaged before May 15, 2012.

### C. Failure to State a Claim under 42 U.S.C. § 1983.

Defendants argue that Plaintiff's complaint fails to state a claim under § 1983. Plaintiff alleges that Defendants' failure to adopt an IGA in conformity with the procedural requirements of A.R.S. § 9-461.11(F) deprived Plaintiff of a protected property right – "a reasonable expectation that Plaintiff would be accorded certain procedural due process prior to the time Defendants adopted and implemented this joint development plan" – without due process of law in violation of the Fourteenth Amendment. Doc. 1-1, ¶ 120-21. Defendants argue that Plaintiff's claim alleges a "mere failure of Defendants to follow state law," and that this cannot form the basis for a § 1983 claim. Doc. 7 at 7-8.

The Due Process Clause forbids governmental deprivation of substantive rights without constitutionally adequate procedure. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). To obtain relief on a procedural due process claim, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to

constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008). "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Roth*, 408 U.S. at 577)). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983). "Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created 'if the procedural requirements are intended to be a significant substantive restriction on . . . decision making.'" *Wedges/Ledges*, 24 F.3d at 62 (quoting *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)).

In the Ninth Circuit, procedural due process claims generally fail where the relevant law does not contain mandatory language that significantly constrains the decision maker's discretion. *Shanks*, 540 F.3d at 1090. "Only if the governing statute compels a result upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, does it create a constitutionally protected property interest." *Id*. at 1091 (internal quotation marks and citation omitted). For example, in *Wedges/Ledges*, the property interest at stake was a license to operate amusement games. Under the controlling section of the Phoenix City Code, the City Treasurer was required to determine whether or not a coin-operated game qualified as a "game of skill." *Wedges/Ledges*, 24 F.3d at 63. If it did, the Code provided that a game license tag "shall be issued." *Id*. The court concluded that the use of the imperative in the provision without the presence of any open-ended discretionary factors created an expectation and protected property interest that could form the basis of a due process claim. *Id*.

In *Shanks*, by contrast, a homeowners and community organization sued to enjoin construction of a duplex that it feared would devalue the neighborhood. The organization

alleged that it was denied a procedural due process right when the city of Spokane failed to enforce provisions of its zoning code intended to preserve historic districts. *Shanks*, 540 F.3d at 1084. *Shanks* held that no protected property interest was at stake because the relevant law granted the city wide discretion in negotiating the content of building permits and because the city was directed to guide its discretion by considering "factors of public interest" in an unspecified way that did not mandate any outcome. *Id*. at 1091.

The statute in this case contains mandatory procedural language. *See, e.g.*, A.R.S. § 9-461.11(F)(1)(d) ("A property owner *shall* be afforded the opportunity at a public hearing . . . to present [evidence]. If on the basis of the [evidence] presented there is reason to believe . . . the [plan] may result in a significant [reduction in value or productive use], adoption or implementation of the plan *shall* be postponed pending investigation and resolution of the alleged deprivation.") (emphasis added). The mandatory language does not, however, dictate any particular outcome. It merely states that adoption or implementation of the plan "shall be postponed" for further investigation and resolution. Plaintiff does not complain in this case about a lack of postponement. Plaintiff complains that the project went forward as planned. And yet the statue says nothing about whether the governing body was required to modify the project on the basis of evidence presented at the public hearing. On that question, the governing body retains discretion. The Court concludes, therefore, that A.R.S. § 9-461.11(F) creates no procedural entitlement that rises to the level of a property right protected under the Constitution. *See James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010) ("To create a right protected by the Due Process Clause, the state law must provide more than merely procedure; it must protect some substantive end.") (internal quotation marks and citation omitted); *accord Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.").

Additionally, even if the Court found that Plaintiff possessed a protectable property interest, Defendants' conduct did not violate due process. It is the Due Process

Clause, not state law, which determines what process is due. *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994). "Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1405 (9th Cir. 1989) (internal quotations omitted). Plaintiff's complaint alleges that it was provided notice of Defendants' proposed action and that it was able to appear at multiple public hearings and present evidence. Even if Defendants' conduct did not perfectly accord with state law, due process was satisfied by this notice and opportunity to be heard. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (noting that "if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny.") (internal quotations marks and citation omitted) (overruled on other grounds, *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).

The Court will dismiss Plaintiff's § 1983 claim.

**D.     Remand.**

This case was removed from state court on the basis of the federal question presented by the § 1983 claim, with supplemental jurisdiction over the state law claims. Doc. 1, ¶ 2. A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that "'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). While not a hard-and-fast rule, the statement has come to mean that "in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*.

The Court concludes that this action should be remanded. With dismissal of the § 1983 claim, the basis for this Court's federal question jurisdiction no longer exists. The

remaining state-law claims, particularly the claim under A.R.S. § 9-461.11(F), present complicated questions of statutory interpretation that are best addressed by Arizona trial and appellate courts. Those courts have a greater interest and expertise in resolving state law claims and applying state statutes. Additionally, remand will benefit the federal system by allowing this Court to devote its scarce resources to resolving federal issues.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 7) is **granted in part**.
2. This case is remanded to Maricopa County Superior Court.

Dated this 18th day of April, 2014.

_____
David G. Campbell
United States District Judge